


FILED

Feb 12 2026, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

**F.P.,**

*Appellant-Respondent*

v.

**D.R.,**

*Appellee-Petitioner*

---

February 12, 2026

Court of Appeals Case No.
25A-PO-1563

Appeal from the LaPorte Superior Court

The Honorable Jaime Oss, Special Judge

Trial Court Cause No.
46D01-2407-PO-299

---

**Opinion by Judge Bailey**
Judges Vaidik and Scheele concur.

**Bailey, Judge.**

# Case Summary

[1] D.R. filed two petitions for a protective order against her neighbor, F.P. The trial court dismissed the first petition without prejudice on D.R.'s motion and granted the second petition after a hearing. On appeal, F.P. argues that the trial court erred in granting the petition. We disagree and therefore affirm.

# Facts and Procedural History

[2] D.R. and her husband Liam[1] have lived in a home facing Lakeshore Drive in Michigan City since 2014. F.P. and his wife V.P. live in a home that is directly behind D.R.'s home and faces Prospect Road, which intersects Lakeshore Drive. In January 2023, an entity acquired a home on the corner of Lakeshore Drive and Prospect Road that is adjacent to both D.R.'s home and F.P.'s home and is currently used as a rental property ("the rental property"). D.R. supervised the renovation of the rental property and the installation of its driveway, which exits onto Prospect Road. The driveway abuts F.P.'s property and allows D.R. and her family to access the backyard of their home. Previously, D.R.'s family had to park "on Lakeshore Drive and walk up 65 stairs to get to [their] home." Ex. Vol. 4 at 31-32.

---

[1] Liam is D.R.'s attorney of record on appeal and represented her at the hearing on her second petition. His name appears in full on her appellee's brief.

[3]     D.R.'s family enjoyed a cordial relationship with F.P.'s family until the improvements to the rental property began in early 2023. In April, D.R. sent a text to F.P. and V.P. that reads in relevant part as follows:[2]

> As you may have noticed, we are under going substantial construction in front of you! We hope to alleviate the parking issues on prospect and provide more privacy between our homes! There will be trucks coming and going and substantial debris as trucks come and go. I wanted to give you a heads up, in case you wanted to move your vehicle back on prospect. It's not in our way, but your vehicle may experience dust etc from the gravel etc.… Also, out of courtesy I wanted to let you know that we had to record our surveys, per our contractors so that they could properly place pavers and trees etc.… It looks like your chain link fence is entirely on my … property by as much as a couple feet. Of course, I'm ok with that. I wouldn't want you to have to remove your fence or your air conditioning unit. I'm 💯 fine with it. My attorney may require an encroachment agreement in order for it all to remain. Let me know your thoughts! We are looking forward to a great summer!

*Id*. at 157-67. F.P. replied with the following text: "Really D., sober up, get the sh*t away from my car. I tried very hard to talk it out with Bill [i.e., Liam]. You can apologize in the morning." *Id*. at 168.[3]

---

[2] Where appropriate here and elsewhere, we have replaced names with initials.

[3] F.P. considered D.R.'s text "a veiled threat" and testified that after he received it, he saw D.R. "picking up sticks and piling them in front of [his] car. And I mean, like 4 feet high. And she had a cup. She was drinking something. I don't know what was going on." Tr. Vol. 2 at 159, 160.

[4]    In May, F.P. sent D.R. a text accusing her construction workers of damaging his retaining wall: "Your guys torn off the top timber on my retaining wall and took off. Really upsets me. Please have the timber replaced. I'm aggravated cleaning this stuff and chasing after. It's not right." *Id*. at 192-93.[4] D.R. responded,

> I would like to formally request that you don't contact me via text, phone, email, or otherwise. You are infringing on my quiet enjoyment of my property which is establishing legal base for lawsuit (which I hope I will never need to do). Both myself and my contractors have been harassed and threatened by you. The verbal assault on my contractor on 4/19/23 is well documented.[5] Please remove my contact information from your phone and do not contact me again, or I will get a restraining order and take legal action. Thank you.

*Id*. at 194-95. F.P. replied,

> [Y]ou can get sued for "gross mopery" under Indiana Statutes for making false dumb, very dumb accusations. Furthermore, keep those criminals contractors you hired away from my property. and stick it.
>
> ps I do keep all the garbage out of my address book. Good luck with the flop house hotel.

---

[4] According to Robert Hugley, who installed pavers on the rental property's driveway, the damage was caused by one of F.P.'s Amazon delivery drivers. Tr. Vol. 2 at 14.

[5] According to Hugley, F.P. "cussed [him] out" and "told [him] to get off [F.P.'s] property." Tr. Vol. 2 at 13.

*Id*. at 196-98.

[5] The next morning, F.P. sent D.R. the following text:

> I think my sarcasm and words were too harsh. You and Bill are wonderful people and you have a lovely Family that you both should be proud of. D. you do not deserve that kind of trash talk and I regret responding to your text with those ugly words. Truly sorry, hope you have a much better day today.

*Id*. at 198-99.

[6] Later that month, D.R. filed a petition for a protective order against F.P. under cause number 46D01-2305-PO-121. In June 2023, the trial court held a hearing at which only D.R. testified, and the hearing was set to be concluded at a later date. D.R. subsequently filed a motion for voluntary dismissal without prejudice, which was granted in October 2023.

[7] In July 2024, D.R. filed a second petition for a protective order against F.P. under the current cause number, and the case was transferred to the judge who had heard the original petition. D.R.'s second petition was based on the following six "incidents": (1) from February through May 2023, F.P. and V.P. "constantly placed [her] under surveillance with their phones and other cameras pointed from their property" and "stare[d] at [her] for long periods of time from their deck or through their windows which are just a few feet from the property line"; (2) F.P.'s April 2023 text telling her to "sober up" and "get the sh*t away from [his] car"; (3) F.P.'s "verbal[] assault[]" of one of her contractors on April 19, 2023, and his "threatening behavior to [her] octogenarian surveyor"; (4)

F.P.'s May 2023 texts to D.R.; (5) in October 2023, F.P. "made two false police reports" that two of her friends "had trespassed on his property"; (6) in July 2024, F.P. called 911 on multiple occasions "to falsely claim" that D.R.'s "garbage cans were obstructing his vehicle[,]" which resulted in police officers questioning D.R. outside her home in her children's presence on July 23. Appellant's App. Vol. 2 at 11-14. The next night, D.R.'s children noticed that "someone was staring at them from [F.P.'s] house and knocking on the window." *Id*. at 14.

[8]     In August 2024, D.R. filed a supplement to her petition in which she alleged that in November 2023, after she dismissed the original petition, F.P.'s Amazon delivery drivers started cutting through her backyard, sometimes after dark, to deliver packages to F.P.'s front door. D.R.'s neighbor told her that she had learned that F.P. had instructed the drivers to do so, which prompted D.R. to send a cease-and-desist letter to F.P. and his counsel. When a driver subsequently attempted to deliver a package to F.P. through D.R.'s yard, she took a photo of the driver's phone, "which contained the delivery instructions from [F.P.]" *Id*. at 83.

[9]     In March 2025, D.R. filed a second supplement to her petition in which she alleged that in February, she discovered that F.P. had directed one of his surveillance cameras that "was installed approximately 2 feet from [her] property line … directly at [her] rear door." *Id*. at 98. She further alleged that when city code enforcement officers rang her doorbell and turned to leave when they received no answer, F.P. "called out to them and shared his observations

from his surveillance of [D.R.'s] property and her contractors from earlier that day." *Id.* at 98-99. F.P. "assured the code enforcement officers that a contractor was inside [D.R.'s] property [and] also informed the code officers of the name of a contractor they could call to gain access into [her] property." *Id.*

[10] A multiday hearing was held on D.R.'s second petition and its supplements in March, April, and May. Multiple witnesses testified to the foregoing incidents, supporting audio, video, and documentary evidence was presented, and D.R.'s testimony on the original petition was incorporated into the record. On June 6, the trial court granted D.R.'s petition and issued a protective order effective until June 2027 that reads in pertinent part as follows:

> f. [F.P.] represents a credible threat to the safety of [D.R.] or a member of [D.R.'s] household.
>
> g. [D.R.] has shown, by a preponderance of the evidence, that repeated acts of harassment [have] occurred sufficient to justify the issuance of this Order.
>
> ....
>
> i. The following relief is necessary to bring about a cessation of the violence or the threat of violence.
>
> ....
>
> 1. [F.P.] is hereby enjoined from threatening to commit or committing acts of harassment against [D.R.] and [her children].
>
> 2. [F.P.] is prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with [D.R.]

....

5. [F.P.] is ordered to stay away from the residence and/or place of employment of [D.R.]

....

8. The Court orders the following additional relief to provide for the safety and welfare of [D.R.] and each family or household member designated in Paragraph 1 of this Order:

[F.P.] shall not stare at [D.R.]

Appealed Order at 2-3. F.P. now appeals.

# Discussion and Decision

[11] Civil protective orders are governed by the Civil Protection Order Act ("the Act"), Indiana Code Chapter 34-26-5, which we construe to promote the "protection and safety of all victims of harassment in a fair, prompt, and effective manner" and the prevention of future harassment. Ind. Code § 34-26-5-1. Indiana Code Section 34-26-5-2(b) provides that "[a] person who is or has been subjected to harassment may file a petition for an order for protection against a person who has committed repeated acts of harassment against the petitioner."

[12] For purposes of the Act, "harassment" means "conduct directed toward a victim that includes, but is not limited to, repeated or continuing impermissible contact: (1) that would cause a reasonable person to suffer emotional distress;

and (2) that actually causes the victim to suffer emotional distress." I.C. § 34-6-2.1-80(a). "'Harassment' does not include statutorily or constitutionally protected activity[.]" I.C. § 34-6-2.1-80(b). "Impermissible contact" includes following or pursuing the victim or communicating with the victim. I.C. § 35-45-10-3(a). This list is nonexclusive. I.C. § 35-45-10-3(b). To justify the issuance of a protective order, "the harassment must objectively include a present and credible threat." *E.W. v. J.K.*, 253 N.E.3d 1111, 1113 (Ind. Ct. App. 2025) (citing *S.H. v. D.W.*, 139 N.E.3d 214, 220 (Ind. 2020)), *trans. denied*. "A credible threat is 'plausible or believable.'" *Id.* (quoting *S.H.*, 139 N.E.3d at 220). The petitioner must establish harassment by a preponderance of the evidence. I.C. § 34-26-5-9(h).

[13]    "When reviewing a trial court's issuance of a protective order, we apply a two-tiered standard of review." *J.T. v. A.H.*, 255 N.E.3d 512, 517 (Ind. Ct. App. 2025), *trans. denied*. "We consider whether the evidence supports the trial court's findings and, if so, whether the findings support the judgment." *Id.*[6] "In deference to the trial court's proximity to the issues, we disturb the order only where there is no evidence supporting the findings or the findings fail to support the order." *Id.* "We neither reweigh the evidence nor determine the credibility of witnesses, and we consider only the evidence favorable to the trial court's decision." *Id.* "Further, the party appealing the issuance of the protective order

---

[6] Findings are required to grant a protective order, but they need not be extensive. *Costello v. Zollman*, 51 N.E.3d 361, 365 (Ind. Ct. App. 2013), *trans. denied*. Here, neither party challenges the sufficiency of what are essentially ultimate findings entered by the trial court.

must establish that the trial court's findings are clearly erroneous, meaning a review of the record leaves us firmly convinced that a mistake has been made." *Id.* "In close cases … when the evidence could lead a court to grant or deny a petition, … 'the trial court is the one to make that call.'" *S.D. v. G.D.*, 211 N.E.3d 494, 498 (Ind. 2023) (quoting *S.D. v. G.D.*, 195 N.E.3d 406, 411 (Ind. Ct. App. 2022) (Altice, J., dissenting), *trans. granted*).

[14] F.P. first argues that "[t]he trial court erred in granting D.R.'s petition for a protective order because D.R. failed to establish that F.P. represented a present, credible threat of physical harm to her." Appellant's Br. at 15 (bold omitted).[7] But the trial court made no finding that D.R. had established that F.P. represented such a threat, and D.R. was not required to do so to obtain a protective order.[8]

[15] F.P. also argues that the trial court erred in finding that he harassed D.R. He asserts, "D.R.'s allegations span two years and describe a series of discrete, disconnected episodes, many of which don't even involve D.R. directly[.]" Appellant's Br. at 20. But several of them do, and, taken together, they establish

---

[7] One of the cases that F.P. relies on to support this argument is a memorandum decision that is not properly designated as such. *See* Appellant's Br. at 15 (citing *Gilles v. State*, No. 23A-PO-1255 (Ind. Ct. App. Oct. 10, 2023) (mem.)); Ind. Appellate Rule 22(A)(2) (giving proper citation format for memorandum decisions).

[8] To be sure, the protective order grants relief "to bring about a cessation of the violence or the threat of violence." Appealed Order at 2. This language is taken verbatim from Indiana Code Section 34-26-5-9(h) ("Upon a showing of domestic or family violence *or* harassment by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence.") (emphasis added). Clearly, harassment is a form of emotional violence, which the Act is intended to protect against.

conduct that constitutes harassment under the Act.[9] The facts most favorable to the trial court's order indicate that F.P. sent D.R. antagonistic texts and continued to text her after she expressly told him to stop doing so;[10] F.P. "incessantly" stared at D.R. and trained his phone camera and security camera on her property, such that she "tend[s] to use the stairs in the front so that he can't see [her] coming and going," Ex. Vol. 4 at 73, 70; F.P. used his security camera to closely monitor the comings and goings of D.R. and her visitors, even going so far as to tell a code enforcement officer that a contractor was inside her home when no one answered the doorbell; after D.R. dismissed her first petition, F.P. instructed his Amazon delivery drivers to trespass on D.R.'s property when making their deliveries, which they did "at all hours of the night," notwithstanding a cease-and-desist letter, until she filed her second petition, Tr. Vol. 2 at 98; and, also after D.R. dismissed her first petition, F.P. started calling the police to falsely complain that she was obstructing his vehicle with garbage cans, which led to officers questioning D.R. in her backyard in the

---

[9] At the hearing on D.R.'s first petition, the trial court remarked, "What [D.R.'s] contractors are doing [with respect to their alleged harassment by F.P.] is frankly irrelevant to what has happened to [D.R.]" Ex. Vol. 4 at 99. And at the hearing on the second petition, with respect to F.P.'s allegedly false reports to police that D.R.'s neighbors were trespassing on his property, the court stated, "That's not what we're here for.… We're here to potentially protect [D.R.] …. not the rest of the neighborhood.… They can bring their own protective orders if they …. think that they're being harassed." Tr. Vol. 2 at 66-67. Because D.R. presented sufficient evidence of direct harassment by F.P., we need not consider whether these incidents also constituted harassment under the Act.

[10] In her second petition, D.R. characterized F.P.'s ostensibly apologetic text as "mocking[,]" Appellant's App. Vol. 2 at 13, and she testified that it was emotionally distressing. Ex. Vol. 4 at 120. It was within the trial court's discretion to find this testimony credible. Any trace of remorse on F.P.'s part was overwhelmingly contradicted by his subsequent harassing conduct, much of which occurred after D.R. dismissed her first petition. D.R.'s testimony establishes that since 2023, F.P. has refrained from harassing her only when he is under the threat of judicial sanction.

presence of her children. Moreover, D.R. testified that, "cumulatively," F.P.'s actions caused her emotional distress and that her "use and enjoyment of [her] property" had "declined a lot" since January 2023 due to F.P.'s conduct. Ex. Vol. 4 at 113; Tr. Vol. 2 at 127.

[16] The foregoing evidence amply supports the trial court's finding that F.P. engaged in repeated acts of harassment against D.R. that justify a protective order. F.P.'s conduct directed toward D.R. actually caused her to suffer emotional distress, and we conclude that a reasonable person would have suffered emotional distress as well. *See, e.g.*, *E.W.*, 253 N.E.3d at 1114 (affirming protective order that was based on respondent shining a flashlight into her neighbor's windows, monitoring her with cameras, and meeting her "outside 'every single time' [she] went outside, 'within minutes, sometimes even seconds.'"). F.P.'s argument to the contrary is merely an invitation to reweigh the evidence and reassess witness credibility in his favor, which we may not do. Consequently, we affirm.

[17] Affirmed.

Vaidik, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Ciyou & Associates, P.C.
Indianapolis, Indiana

Anne M. Lowe
Fugate Gangstad Lowe, LLC
Carmel, Indiana

ATTORNEY FOR APPELLEE

Liam F. Reardon
The Reardon Law Firm
Chicago, Illinois